IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KRISTA BOARDMAN,

                Plaintiff,

v.                                                 OPINION and ORDER

ANDREW SAUL,                                  19-cv-546-jdp
    Commissioner of the Social Security Administration,

                Defendant.

---

Plaintiff Krista Boardman seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding Boardman not disabled within the meaning of the Social Security Act. Boardman contends that the administrative law judge erred by: (1) failing to assess Boardman's fibromyalgia properly; (2) failing to adequately assess Boardman's subjective symptoms; (3) failing to provide good reasons for rejecting the opinion of Boardman's treating rheumatologist; and (4) failing to ensure the reliability of the job numbers provided by the vocational expert.

The court is not persuaded that the ALJ erred, so it will affirm the commissioner's decision.

ANALYSIS

Boardman seeks benefits for disability beginning in October 2012 when she was 35 years old. R. 202, 209.[1] In a September 2016 decision, an ALJ found that Boardman was not disabled. R. 15–24. Boardman appealed the decision, and in May 2018, this court remanded

---

[1] Record cites are to the administrative record, located at Dkt. 8.

the case for further administrative proceedings because the ALJ had failed to provide adequate reasons for rejecting the opinion of Boardman's treating rheumatologist, Dr. Brian Jubek. R. 653–59; Case no. 17-cv-753-jdp, Dkt. 17. On remand, a different ALJ conducted a hearing, and then issued a decision finding plaintiff not disabled. R. 549–63. The ALJ found that Boardman suffered from several severe impairments, including obstructive sleep apnea, obesity, fibromyalgia, trochanteric bursitis of the hips, migraine headaches, and vertigo, but that Boardman had the residual functional capacity to perform sedentary work, with additional environmental and postural restrictions. R. 551–53. Relying on the testimony of a vocational expert, the ALJ found that Boardman could still perform work in the national economy despite her impairments. R. 561.

The case is now before this court to determine whether the second ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The threshold for sufficiency is not high; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

**A. Boardman's fibromyalgia and subjective symptoms**

Boardman's first and second arguments are related. She contends that the ALJ's assessment of her fibromyalgia is flawed because the ALJ distorted and minimized evidence of Boardman's impairments, cherry-picked the record for statements suggesting that Boardman's symptoms had improved, and improperly rejected Boardman's subjective complaints. Boardman contends that the ALJ failed to appreciate the unique symptoms, diagnostic

methods, and treatment methods associated with fibromyalgia, including that fibromyalgia is often assessed based on a patient's subjective reporting of symptoms. *See Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) ("The extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment"); *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (ALJ may not reject claimant's reports of pain from fibromyalgia solely because there is no objective medical evidence supporting it). But Boardman has not shown that the ALJ erred in considering her fibromyalgia or subjective symptoms.

The ALJ did not dismiss the severity of Boardman's fibromyalgia. The ALJ provided a thorough discussion of Boardman's fibromyalgia treatment, summarizing several years of treatment notes from Boardman's rheumatologist. R. 553–55. The ALJ discussed Boardman's subjective complaints of trigger point tenderness, fatigue, difficulty sleeping, muscle spasms, widespread pain, and swelling, as well as the rheumatologist's objective examinations and medication decisions. *Id.* The ALJ found that Boardman's fibromyalgia is a severe impairment and that her fibromyalgia, along with other impairments, supported restricting Boardman to sedentary work with additional restrictions to account for Boardman's pain and mobility problems. *Id.* at 560–61. But for several reasons, the ALJ did not think that Boardman's fibromyalgia precluding her from working.

The ALJ explained that Boardman's fibromyalgia had been treated conservatively, with medications and recommendations for physical therapy and exercise. R. 558. Despite Boardman's complaints of ongoing and widespread pain, her physical examinations showed that she was not in acute distress, that she had normal muscle strength and limited swelling, that she could make a fist, that she had a normal range of motion in her joints, spine, and neck, and that her medications reduced her pain. R. 553–56, 558. And, although Boardman was

offered other treatment options, including referrals for physical therapy and a sleep study, she declined those and continued with the same medications for several years. R. 558.

The ALJ also discussed Boardman's daily activities. She noted that Boardman walked and stretched daily, and that Boardman had engaged in other limited activities since her alleged onset date, including playing with dogs at the humane society, driving her mother to appointments, gardening, and deer hunting. R. 558–59. The ALJ acknowledged that these activities did not equate to working a 40-hour work week, but she found that the activities showed that Boardman was not as limited as she alleged. *Id.* The ALJ noted that Boardman's hands likely were not as impaired as she reported them to be, as Boardman managed to use an inhaler for asthma, take medications, put in her oral appliance for sleep apnea, and make a fist at doctor's appointments. *Id.* at 559. For these reasons, the ALJ partially credited Boardman's statements regarding her subjective symptoms, but she concluded that the record did not support Boardman's allegations of disabling pain.

Boardman takes issue with the ALJ's discussion, arguing that individuals who suffer from fibromyalgia can have normal muscle strength, normal range of motion, and no swelling. She also argues that fibromyalgia symptoms can flare up, and they can be more severe at times. This might be true, but the ALJ was entitled to consider medical findings related to muscle strength, range of motion, and Boardman's presentation at her appointments in assessing her statements regarding the extent of her symptoms and functioning. The ALJ was also permitted to consider Boardman's daily activities and treatment history. As the Seventh Circuit recently clarified:

> The Social Security Administration's guidance on evaluating fibromyalgia, see SSR 12-2P, limits only the evidence used to diagnose the disease as a medically determinable impairment (step two in the five-step analysis). It does not limit the evidence

4

> an ALJ can consider in evaluating the severity of fibromyalgia for purposes of determining a residual functioning capacity. Further, the Social Security Administration's guidance on how to evaluate pain (fibromyalgia's chief symptom) directs ALJs to consider the very symptoms that the ALJ considered here. See 20 C.F.R. § 404.1529(c)(2) ("[E]vidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms.").

*Gebauer v. Saul*, 801 F. App'x. 404, 410 (7th Cir. 2020). Contrary to Boardman's contention, the ALJ did not err by considering objective medical findings, treatment decisions, or Boardman's activities in discounting her self-reports of pain and limitations due to her fibromyalgia.

For all of these reasons, I conclude that the ALJ's assessment of Boardman's fibromyalgia and subjective symptoms is supported by substantial evidence.

## B.  Dr. Jubeck's opinion

Boardman next contends that the ALJ erred by failing to give more weight to Dr. Jubek's opinions about Boardman's functional capacity. Under the treating physician rule in effect at the time of Boardman's application,[2] the ALJ had to give a treating physician's opinion controlling weight if it was "well-supported and not inconsistent with other substantial evidence." *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016); 20 C.F.R. § 404.1527(c)(2)–(6). If the ALJ did not give controlling weight to a treating physician's views, the ALJ had to assign it a weight based on factors including the length and nature of the physician-patient relationship, the opinion's consistency with the record, and the physician's area of specialty.

---

[2] The treating physician rule applies only to claims like Boardman's that were filed before March 27, 2017, when the regulations changed prospectively. 20 C.F.R. § 404.1520c(a); *Gerstner*, 879 F.3d at 261.

20 C.F.R. § 404.1527(c)(2); *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018). As long as the ALJ considered these factors and minimally articulated her reasons, the court must uphold a decision not to assign controlling weight to a treating physician's opinion. *Olivas v. Saul*, 799 F. App'x 389, 391 (7th Cir. 2019) (*citing Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)).

Dr. Jubek provided two opinions about Boardman's functional capacity. First, in 2012 opinion, Jubeck stated that Boardman could sit less than two hours, and stand/walk less than two hours, in an eight-hour workday; sit 15 minutes at a time; stand 15 minutes at a time; rarely lift less than 10 pounds; and perform fine manipulations one-third of the workday. R. 341–42. He opined that Boardman would need to take unscheduled breaks, but he stated that the length of those breaks was "unknown." She would also need to elevate her legs, but the height of elevation was "unknown." R. 342. Jubek stated that Boardman would be absent from work more than four days per month. R. 341–43. Jubeck indicated that the limitations dated back to November 2008 "based on [his] review of the electronic medical record." R. 343.

The ALJ gave "limited weight" to Jubek's 2012 opinion for several reasons. The ALJ found that Jubek's physical limitations for Boardman were inconsistent with Boardman's treatment records, which showed that Boardman's condition was stable on three medications, and with evidence showing that Boardman was working part-time and engaging in some daily activities during the time period in which Jubek stated that the limitations applied. R. 559. The ALJ also noted that Jubek completed the 2012 report after seeing Boardman only once, and that he wrote "unknown" in response to how often Boardman would need unscheduled breaks and how high she would need to elevate her legs.

Jubek provided a second opinion in 2014, with similar, but more detailed, limitations regarding Boardman's functional capacity. R. 270–72. The ALJ rejected the 2014 opinion as well, finding that Jubek's 2014 opinion was inconsistent with Boardman's daily activities, treatment regimen, and physical examinations showing that she had normal range of motion, normal muscle strength, ability to form a fist, and no acute distress despite reports of widespread pain. R. 560. The ALJ also noted that, although Jubek stated that Boardman would need to elevate her legs 50 percent of the workday, Jubek had never recommended that Boardman elevate her legs as part of treatment. *Id.*

Boardman takes issue with each of the ALJ's reasons for discounting Jubek's opinions, but she has not shown that the ALJ's decision should be reversed. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (court must uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment."). Contrary to Boardman's arguments, the ALJ acknowledged Jubek's diagnosis and treatment of Boardman's fibromyalgia, and considered Jubek's expertise as a rheumatologist, the length of this treatment, the consistency of his opinion with the record as a whole, and the consistency of his opinion with Boardman's reported symptoms. The ALJ also acknowledged Boardman's subjective symptoms and reports of ongoing and debilitating pain. The ALJ explained that she doubted the severity of Boardman's self-reported symptoms because Boardman's condition had been managed with medications and because she had physical examinations that showed greater functional abilities than those described by Boardman or her doctor. *Id.* Boardman has failed to point to any evidence regarding her fibromyalgia that would compel the ALJ to accept Jubek's assessment.

Boardman has failed to make a convincing argument that the ALJ did not have good reasons for discounting Jubek's opinions regarding her physical limitations. Further, to the

7

extent that any one of the ALJ's specific reasons may have been incorrect, the error would not be grounds for remand because the ALJ cited several valid reasons to discount the opinion. *See Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). Accordingly, the ALJ's treatment of the Jubek opinions provides no basis for reversing the ALJ's decision.

## C. Reliability of vocational expert's job numbers

A vocational expert testified at the 2019 hearing that an individual with Boardman's residual functional capacity could perform the jobs of information clerk, assembler, and account clerk, with a total of 145,000 jobs available in the national economy. R. 600. Boardman contends that the expert failed to show that his estimates were "the product of a reliable method," as required by *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018).

The vocational expert testified that the source of her numbers was U.S. Publishing's Occupational Employment Quarterly. R. 603–04. Boardman's counsel objected to the source, arguing that the numbers were unreliable because the OEQ uses an "equal distribution method." *Id.* The ALJ overruled counsel's objection, explaining that she found the vocational expert's testimony to be the product of a reliable method. R. 562.

Counsel for Boardman has made the same argument in at least three other cases in this court, and the court has rejected the argument each time. *See Luzar v. Saul*, No. 19-CV-1018-JDP, 2020 WL 5249225, at *4 (W.D. Wis. Sept. 3, 2020); *Coyier v. Saul*, No. 19-cv-393-bbc (W.D. Apr. 2, 2020); *Arms v. Berryhill*, No. 18-cv-476-jdp, 2019 WL 1352809, at *6 (W.D. Wis. Mar. 26, 2019). The court observed that OEQ is "a source on which VEs customarily rely," *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009), and that the plaintiff had failed to identify any specific problems with the reliability of the numbers in OEQ or any additional

questions that the ALJ should have asked the expert. Boardman's argument about the OEQ fails for the same reasons that the argument failed in those cases.

## ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered March 3, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge